IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

FORMAX, INC., an Illinois Corporation,

          Plaintiff,

v.

Case No. 11-C-298

ALKAR-RAPIDPAK-MP EQUIPMENT, INC.,
a Wisconsin Corporation and TOMAHAWK
MANUFACTURING, INC., a Wisconsin
Corporation,

          Defendants.

**ORDER**

Formax Inc. (hereinafter "Formax") brought this lawsuit against Defendants Alkar-Rapidpak-MP Equipment, Inc. ("Alkar") and Tomahawk Manufacturing, Inc. ("Tomahawk") (collectively "Defendants") for infringement of Formax's U.S. Patent No. 7,318,723 ("the '723 patent"), which is directed at the frame structure of a food processing machine (also known as a "former"). Formax alleges Defendants' product, the MP ServoDrive Former (the "accused former") infringes several claims of the '723 patent. Although the Court has not yet construed the terms in a *Markman* hearing, Defendants contend that "all claims of the '723 patent require one or more elements that are wholly lacking" in their accused former. (Br. in Supp. of Defs' Mot. for Fast-Track Summ. Judg. at 5.) Defendants further contend the accused former does not infringe the '723 patent under the doctrine of equivalents. Defendants have thus moved for summary judgment.

The accused former is a high-power, high-speed former that uses a mold plate that travels back and forth in a reciprocating motion. The parties dispute whether a material issue of fact remains with respect to the accused former's alleged infringement of two of the claims of the '723 patent: Claim 8, which teaches "a frame structure for a food product forming apparatus that comprises a pump cylinder that receives food product to be pressurized by a pump plunger that is driven into the cylinder by a driving mechanism . . . ." (12:24-27),[1] and Claim 13, which teaches a frame structure for food forming apparatus having two angular struts used to resist the forces of the high-speed movement of the reciprocating mold plate. (12:58 - 13:10.) Defendants maintain that the accused former uses a servo-driven plunger and has a bulkhead frame instead of angular struts, features that they contend cannot infringe the '723 patent because they are both literally and equivalently distinct from key limitations of the claims at issue.

**Claim 8**

Defendants' argument regarding their non-infringement of Claim 8 is based their contention that the specification and prosecution history require that Claim 8 include a hydraulically driven pump. Claim 8 does not, on its face, require a hydraulically driven pump: "the forming apparatus that comprises a pump cylinder that receives food product to be pressurized by a pump plunger that is driven into the cylinder by a *driving mechanism* . . . ." (12:25–26.) (italics added). Defendants nonetheless argue that the specification repeatedly refers to and depicts a hydraulic pump, and dependant Claim 9 refers back to a hydraulic cylinder. Defendants further point to Claims 1 and 19 as indicating that the device contemplates and requires a hydraulically driven pump. According

---

[1] Herein I will simply refer to the column and line numbers of the patent at issue.

to the preambles of Claims 1 and 19 "the forming apparatus comprises at least one hydraulically driven pump." (11:46–47;19:2–3.) Defendants also emphasize the '723 prosecution history, in which Formax argued that "the frame portion supports a hydraulic cylinder" and the "tie rods resists the separation force between the hydraulic cylinder mounting plate 516 and the pump housing 71 due to the food pump plungers 66, 68 compressing food product under force from the hydraulic cylinders 64, 84." Defendants argue that this "unequivocally restricted the scope . . . to frame structures supporting and interacting with hydraulic cylinders." (Def. Br. in Supp. 10.)

Formax counters that the "hydraulically driven" limitation should not be read into Claim 8 simply because the summary of invention and prosecution history reference a "hydraulically driven pump." Formax argues that as an independent claim, Claim 8 should stand on its own and Defendants' attempts to import limitations are improper. Formax contends that the clarification in the prosecution history had "nothing to do with hydraulic feed pump drives" and "did not contain the required express disavowal of non-hydraulic feed pump drives." (Plt. Resp. 16.)

Under the familiar doctrine of claim differentiation, limitations that are expressly included in some claims but omitted in others should not be read into the claim omitting the term. *See, e.g. Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) (stating that importing a different limitation into a claim "improperly discounts substantive differences between the claims."). As Formax notes, Claim 8 is unique in that it particularly omits mention of a hydraulic pump. While dependent Claim 9 does mention a hydraulic pump, dependent claims identify and further limit the claim(s) from which they depend. This distinction further strengthens the case for differentiation of Claim 8. Furthermore, I am unconvinced that the prosecution history is in any way informative on this issue. The crux of Formax's argument before the examiner

3

involved a debate about tie rods versus control rods. Formax never argued its former was different or distinguishable from prior art due to its hydraulic pumps. Only a patentee's clear disavowal of material during the prosecution history can limit the terms of a claim. As there is no such clear disavowal here, I cannot say that the prosecution history adds to Defendants' assertion that claim 8 should be understood as requiring a hydraulic pump.

The prosecution history adds nothing particularly illustrative to an understanding of Claim 8, and the plain language of Claim 8 does not indicate that a hydraulic pump is required. Claim 8 therefore does not require a hydraulic pump for infringement, and as such I cannot conclude that the accused former's servo-driven plunger does not infringe either literally or under the doctrine of equivalents. Defendants' motion for summary judgment with respect to non-infringement of Claim 8 is therefore denied.

**Claim 13**

The parties are also in disagreement about the patent's requirements of angular struts. Independent Claim 13 describes angular struts intended to withstand forces caused by the reciprocating mold plate drive. The patent requires at least two angular struts, one of which extends from a rear location on a base structure forward and upwardly to a central location that is fixed to the frame, and another that extends from a forward location on a base structure rearward and upwardly to a central location that is fixed to the frame. (12:64–13:4.)

Formax posits that the term "angular strut" in Claim 13 should be construed as "an angled structural member subjected to compression, which transfers force along its length." (Vallort Decl. ¶ 25.) Defendants do not object to Formax's construction but contend the accused former does not contain the requisite two angular struts, so no reasonable jury could find literal infringement.

4

Furthermore, Defendants note both angular struts required in Claim 13 must extend "upwardly to an elevated central location" and contend the "bulkhead system" of the accused former cannot be imagined as conforming to these limitations.

Formax maintains the bulkhead's diagonal members are indeed the requisite "angular struts" of Claim 13 and therefore literally infringe it. I find Formax's assertion to be unconvincing. The bulkhead is a unitary structure with individual cutouts. Post-cutout, the shape of the frame left behind is an "X" inscribed in a rectangle. Even assuming the crossing arms of the "X" are in fact struts, I simply cannot conclude that one of these struts extends from a rear location forward and upwardly to a central location that is fixed to the frame and that the other strut extends from a forward location on a base structure rearward and upwardly to a central location that is fixed to the frame. Instead, each arm diagonally extends at a forty-five degree angle from one corner of the bulkhead frame to the opposite corner, with both arms intersecting in the middle. These bisecting arms cannot be understood as extending *to* a central location from the front and rear of the frame; while they may pass *through* a central location, they continue on to the opposite corner of the bulkhead frame. As a matter of literal infringement, this unitary intersecting system of arms, each extending to the opposite corner of the frame cannot comprise two independent, non-intersecting struts obliquely extending to a central location in conformance with the description laid out in Claim 13. I therefore conclude as a matter of law the accused former does not literally infringe Claim 13 of the '723 patent. Defendant's motion for summary judgment with respect to literal infringement of Claim 13 is thereby granted.

Even in the absence of literal infringement of Claim 13, Formax alleges the accused former performs the same function, in the same way, to achieve the same result, as the struts described in

5

Claim 13 of the '723 patent. Under the doctrine of equivalents "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 21 (1997). The doctrine of equivalents is to be applied to each element of the claims, not to the invention as a whole. In other words, according to Formax the accused former's "unitary bulkhead system" achieves the same result in the same way as Formax's "angular struts."

The doctrine of equivalents (as its name suggests) is intended to encompass equivalent elements — substitutes, essentially — rather than elements that effectively widen the scope of what was claimed in the patent. "[A] distinction can be drawn that is not too esoteric between substitution of an equivalent for a component in an invention and enlarging the metes and bounds of the invention beyond what is claimed." *Id.*, at 29 (quoting 62 F.3d 1512, 1573 (Fed. Cir. 1995)(Nies, J., dissenting)). It is the later that is forbidden. "It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Id.*

Based upon these principles, it would seem that the accused former does not infringe Claim 13 of the '723 patent under the doctrine of equivalents. According to Formax's expert, the diagonal members of the bulkhead perform the same function as the Claim 13 struts, "as the forces exerted on the top plate of the [accused former], including the reciprocating forces caused by the drive mechanism, are transferred into these members." (Vallort Decl. ¶ 49.) He further asserts the result of the bulkhead system is the same as the result of the struts: "forces are absorbed and transferred down into a base plate." (*Id.*) But it does not appear that the diagonal elements of the bulkhead

6

perform in the same *way* as the Claim 13 struts. As discussed previously, the diagonal members do *not* extend "forward and upwardly" and "rearward and upwardly" to a "central location" but instead extend the *entire* length of the diagonal of the rectangular frame; their ultimate destination is not the center point of Claim 13. As such, the accused former would not appear to infringe Claim 13 under the doctrine of equivalents because even assuming, *arguendo*, it performs the same function with the same results, it does not appear to perform this function in the same *way* as the Claim 13 struts. Formax's expert does not directly address this issue.

Given the various considerations that go into applying the doctrine of equivalents, however, the Court is reluctant to grant summary judgment on such a bare record. The Defendants have sought summary judgment using this Court's Fast Track Summary Judgment procedure, which is intended to permit early and inexpensive resolution of cases where narrow and discrete issues are dispositive. *See* Preferred Procedures and General Information for Litigants appearing before Judge William C. Griesbach, at http://www.wied.uscourts.gov/index.php?option=com_content&task=view&id=39. As a result, Formax has not had the opportunity to conduct the discovery it claims is needed in order to fairly address the Defendants' non-infringement arguments. This objection seems well-taken with respect to the issue of whether the accused former infringes Claim 13 under the doctrine of equivalents. The question of whether a product infringes under the doctrine of equivalents does not lend itself to resolution on a limited record. The Supreme Court reaffirmed in *Warner-Jenkinson* the broad inquiry required:

> "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case. Equivalence, in the patent law, is not the prisoner of a formula and is not an absolute to be considered in a vacuum. It does not require complete identity for every purpose and in every respect. In determining equivalents, things equal to the same thing may not be equal

7

to each other and, by the same token, things for most purposes different may sometimes be equivalents. Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was."

520 U.S. at 24-25 (quoting *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609 (1950). Absent an opportunity for Formax to discover more about the accused product, it is unable to address these various considerations. Defendant's motion for summary judgment with respect to Claim 13 is therefore denied at this time.

## CONCLUSION

Accordingly, and for the reasons set forth herein, Defendants' motion for summary judgment of non-infringement will be **GRANTED** as to literal infringement of Claim 13; it is **DENIED** in all other respects. Formax's related motion for leave to take discovery under Fed. R. Civ. P. 56(d), Docket 29, is **DENIED** as moot. Having for the most part denied Defendants' motion for summary judgment, Plaintiff will now be allowed to undertake full discovery on all issues bearing on its claims against the Defendants. In the event Plaintiff discovers evidence that calls into question the one issue on which the Court did grant summary judgment, it may request reconsideration. The Clerk is directed to set this matter on the Court's calendar for a Rule 16 scheduling conference. *See* Fed. R. Civ. P. 16. The parties may appear by telephone.

**SO ORDERED** this ___16th___ day of August, 2011.

      s/ William C. Griesbach
      William C. Griesbach
      United States District Judge