# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

FORMAX, INC., an Illinois Corporation,

        Plaintiff,

      v.                                  Case No. 11-C-298

ALKAR-RAPIDPAK-MP EQUIPMENT, INC.,
a Wisconsin Corporation, and TOMAHAWK
MANUFACTURING, INC., a Wisconsin Corporation,

        Defendants.

---

### DECISION ON CLAIM CONSTRUCTION AND ORDER DENYING
### MOTION FOR SUMMARY JUDGMENT

---

      In this action for patent infringement, Formax Inc. (hereinafter Formax) asserts that several food patty molding machines and related products sold by Defendants Alkar-Rapidpak-MP Equipment, Inc., and Tomahawk Manufacturing, Inc., infringe Formax's U.S. Patent Nos. 4,996,743 (the '743 patent), 7,318,723 (the '723 patent), and 7,591,644 (the '644 patent). The case is before the Court for claim construction. Also before the Court is Defendants' motion seeking summary judgment that claims 1-18 of the '723 patent are indefinite and thus invalid under 35 U.S.C. § 112, ¶ 2. What follows is the Court's construction of the 17 claim terms at issue. Based on the Court's conclusion that claims 1-18 of the '723 patent are not indefinite, Defendants' motion for summary judgment will be denied.

### PRINCIPLES OF CLAIM CONSTRUCTION

      The interpretation and construction of patent claims are issues of law for the court to determine. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517

U.S. 370 (1996). The only language of a patent required to be construed is the claim language "in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

In construing claims, the court must evaluate the intrinsic evidence, including the claim language, the specifications, and the patent application. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-131314-17 (Fed. Cir. 2005) (en banc). The claim language defines the scope of the patent protection; accordingly, the court must place primary weight on the ordinary meaning of the claim terms "unless it appears the inventor used them otherwise." *See Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619-20 (Fed. Cir. 1995) (citations omitted); *Merrill v. Yeomans*, 94 U.S. 568, 570 (1876) (stating that claims are "of primary importance, in the effort to ascertain precisely what it is that is patented.").

How a person of ordinary skill in the art understands the claim language provides an objective baseline for claim construction. *Phillips*, 415 F.3d at 1312-13. Because the person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent," claims must be read in view of the specifications of which they are a part. *See id.* at 1313, 1315. Thus, the specifications are "highly relevant to the claim construction analysis" and "usually, it is dispositive." *Id.* at 1315; *see also Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985) ("The specification is . . . the primary basis for construing the claims."); *United States v. Adams*, 383 U.S. 39, 49 (1966) ("Claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention."). However, "the claims, not specification embodiments, define the scope of patent protection. The patentee is entitled to the full scope of his claims" and is not limited "to his

2

preferred embodiment" and the court will not "import a limitation from the specification into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009); *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010) (cautioning "against confining the claims to [preferred] embodiments"); *Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1057-58 (Fed. Cir. 2009) (explaining that it is improper to limit a claim to embodiments described in the specification where "there is no clear intention to limit the claim scope").

The Court may also consider the patent's prosecution history, including reexamination proceedings, if it is in evidence. *Phillips*, 415 F.3d at 1317. The prosecution history, which is part of the "intrinsic evidence," consists of the "complete record of the proceedings before the USPTO and includes the prior art cited during the examination of the patent." *Id.* "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* However, as the prosecution history "represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation," it is given less weight than the claim language and the specifications. *See id.*

The court may also consider, aside from the intrinsic evidence, extrinsic evidence including sources such as the testimony of experts and knowledgeable technical witnesses, dictionaries, and learned treatises. *Id.*; *Markman*, 52 F.3d at 980. Extrinsic evidence is "less significant" than the intrinsic record in determining the meaning of the claim language because of inherent limitations on the evidence's reliability. *See Phillips*, 415 F.3d at 1318-19. Thus, to the extent that the Court considers extrinsic evidence, it does so in the context of the intrinsic evidence and is cognizant of "the flaws inherent" in such extrinsic evidence. *Id.* at 1319.

3

Finally, there is no requirement that the court adopt alternative language for every claim in dispute. The overall purpose of claim construction is to clarify the meaning of disputed claim terms and phrases so that the Court or, if there are factual disputes, a jury can determine whether the claims are (1) valid and (2) infringed upon by the accused product. "Thus, the district court normally will need to provide the jury in a patent case with instructions adequate to ensure that the jury fully understands the court's claim construction rulings and what the patentee covered by the claims." *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004). But this does not mean that the Court must provide alternative language for every claim term in dispute. As the Court expansively explained in *Stanacard, LLC v. Rebtel Networks, AB*:

> "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims," *02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), and district courts routinely decline to interpret claim terms where the terms sought to be defined by a party are readily understood. *See, e.g., Advanced Software Design Corp. v. Fiserv, Inc.*, 625 F. Supp.2d 815, 826 (E.D. Mo. 2008) (finding terms "print" or "printing" and "match" to have their plan and ordinary meaning as understood by someone in the art at the time of the invention); *Level 3 Commc'n, LLC v. Limelight Networks, Inc.*, 589 F. Supp.2d 664, 686–88 (E.D. Va.2008) (refusing to adopt definitions for the terms "obtain[ing]," "determine" and related phrases because they each had a plain and ordinary meaning); *Parker–Hannifin Corp. v. Baldwin Filters, Inc.*, No. 1:07–cv–1709, 2008 WL 5732941, at *10, 2008 U.S. Dist. LEXIS 108152, at *38 (N.D. Ohio July 3, 2008) (finding the words "surrounding and defining" required no construction and should be given their plain and ordinary meaning); *Caddy Prods. Inc. v. Am. Seating Co.*, Civil No. 05–800 (JRT/FLN), 2008 WL 927569, at *9, 2008 U.S. Dist. LEXIS 29130, at *24 (D. Minn. Apr. 4, 2008) (finding ordinary meaning of terms "engaging" and "enclosing" required no definition); *WIMCO, LLC v. Lange Indus., Inc.*, No. 06–CV–3565 (PJS/RLE), 2007 WL 4461629, at *4, 2007 U.S. Dist. LEXIS 92502, at *10–11 (D. Minn. Dec. 14, 2007) (refusing to construe term "filtered drain from the erosion control basin," because "[t]he words in this term are ordinary words, used in their ordinary sense, and any further definition or paraphrasing would serve no useful purpose").

680 F. Supp.2d 483, 487-88 (S.D. N.Y. 2010). In other words, courts should substitute alternative language for the claim terms and phrases in dispute only when alternative language is needed to resolve

4

a dispute or offers greater clarity than the claim language itself. A court does not err when it expressly rejects a party's proposed claim limitations in favor of the plain meaning when the only dispute is over whether the proposed limitations apply and the plain meaning is itself clear. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206-07 (Fed. Cir. 2011).

## ANALYSIS

### A. The '723 Patent

The '723 patent, entitled "Frame For a Patty-Forming Apparatus," issued on January 15, 2008, and was assigned to Formax. ('723 Patent, ECF No. 65-1.) The '723 patent concerns a frame structure for a food forming apparatus. The parties have disputes over ten terms in the '723 patent, which will be discussed below.

### 1. "Frame Structure"

The term "frame structure" appears in the first 18 claims of the '723 patent. As shown in the chart below, Formax contends that this term should be given its ordinary meaning while Defendants offer their own construction.

| Term | Formax's Construction | Defendants' Construction | Court's Construction |
|------|----------------------|--------------------------|---------------------|
| frame structure | Term should be given its ordinary meaning. | The unitary set of components of the machine that are rigidly fixed to each other, and which isolates high loads and stresses generated within the machine. | frame structure |

Case 1:11-cv-00298-WCG   Filed 09/10/12   Page 5 of 21   Document 78

The Defendants' proposed construction improperly reads limitations into the claim. *See Northern Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1290-91 (Fed. Cir. 2000) (stating that courts "will not read unstated limitations into claim language"). The '723 patent nowhere describes the frame structure as a "unitary set of components."[1] The same holds true for "rigidly fixed," which does not appear anywhere within the claim language or specifications. However, Defendants point out that the specification describes the frame structure as providing "an overall rigid design." ('723 Patent, col. 2, lns. 22-23.) In addition, the specification also states that the frame structure "isolates high loads and stresses within the machine." ('723 patent, col. 2, lns. 20-22.) The specification language merely describes the features of the frame structure. The claim term does not, contrary to Defendants' assertions, invite references to the written description. Absent some reference of the claims to the written description, these limitations cannot be imported to the term at issue. *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989-90 (Fed. Cir. 1999) ("[C]laim terms cannot be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources.") Formax argues as well that the patentees did not act as their own lexicographer to give this term special meaning, but instead used "frame structure" in its ordinary sense. *W.E. Hall Co. v. Atlanta Corrugating, L.L.C.*, 370 F.3d 1343, 1350 (Fed. Cir. 2004) ("Here, the inventor was not his own lexicographer within the four corners of the intrinsic evidence. We therefore rely on the plain and ordinary meaning of the terms." (citing

---

[1] Indeed, the word "unitary" appears once in the '723 patent specification in the context of a "single cast stainless steel part." (*See* '723 patent, col. 11, lns. 35-39.) However, "unitary" in this context is a narrow one and does not serve to make a fair and accurate description of "frame structure." Considering that the food patty machine is composed of multiple parts, the use of "unitary" would serve to add a limitation not found elsewhere in the specifications.

6

*Vitronics*, 90 F.3d at 1582)).  I agree and therefore conclude that Formax's argument that the term's ordinary meaning be adopted is more convincing.

### 2.  Driving Mechanism Term

| Term | Formax's Construction | Defendants' Construction | Court's Construction |
|------|----------------------|--------------------------|----------------------|
| driving mechanism | Term should be given its ordinary meaning. | A hydraulic cylinder | driving mechanism |

Formax and Defendants no longer have any point of disagreement regarding this term. Accordingly, because the parties have no dispute, the Court need not determine whether further construction is needed.

### 3.  Angular Strut Terms

The third series of terms at issue concern the '723 patent's angular struts.  As outlined in the chart below, there are three terms about which the parties disagree.

| Term | Formax's Construction | Defendants' Construction | Court's Construction |
|------|----------------------|--------------------------|----------------------|
| angular strut | Term should be given its ordinary meaning.<br><br>OR, if the Court believes the term should be construed:<br><br>structural member subjected to compression, which transfers force along its length. | As stated in this Court's Aug. 16, 2011 order:<br><br>an angled structural member subjected to compression, which transfers force along its length. | an angled structural member subjected to compression, which transfers force along its length. |

7

| a first angular strut extending obliquely from a rear location on said base structure forward and upwardly to an elevated central location | A first angled structural member that transfers force along its length and extends on a slant from a rear location on said base structure forward and upwardly to said elevated central location. | An angular strut that is independent from and does not intersect the second angular strut, and which extends at an angle from the rear of the machine's base, converging forward and up toward the same central place in the machine that the second angular strut is directed to. | A first angled structural member that transfers force along its length and extends on a slant from a rear location on said base structure forward and upwardly to an elevated location at, in, or near the center of the frame. |
|---|---|---|---|
| a second angular strut extending obliquely from a forward location on said base structure rearward and upwardly to an elevated central location | A second angled structural member that transfers force along its length and extends on a slant from a forward location on said base structure rearward and upwardly to said elevated central location. | An angular strut that is independent from and does not intersect the first angular strut, and which extends at an angle from the front of the machine's base, converging backward and up toward the same central place in the machine that the first angular strut is directed to. | A second angled structural member that transfers force along its length and extends on a slant from a forward location on said base structure rearward and upwardly to an elevated location at, in, or near the center of the frame. |

The parties have a limited dispute about the term "angular strut." Formax asserts that the term should be given its ordinary meaning; however, Formax also agrees with the Defendants that should the term require construction, the term should be construed to mean "an angled structural member subjected to compression, which transfers force along its length." Although there is support for the conclusion that a person of ordinary skill in the art would understand the ordinary meaning of the term "angular strut" (*See* Vallort Decl. ¶¶ 17-25, ECF No. 31), I find that the proposed construction provides a fair and accurate description of the term and adds clarity and precision that may be helpful to lay jurors. *See Sulzer Textil*, 358 F.3d at 1366.

8

The language in the later two terms, "extending . . . from a (forward/rear) location on said base structure (forward/rearward) and upwardly," does not warrant further construction because the language has commonly understood ordinary meanings. Furthermore, the specification language supports the ordinary meaning. (*See* '723 Patent col. 1, lns. 51-58.) In regard to the term language "obliquely," both Formax and Defendants substitute the phrase "on a slant," which is a plain meaning of the word "obliquely." "Obliquely" is a reference to the struts that extend on an angle. (*See* Formax *Markman* Br. Ex. E., ECF No. 65-5 ("The prior art reference . . . do[es] not teach the presence of *obliquely extending struts.*").); *see also* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 802 (10th ed. 1999) (defining "oblique" as "neither perpendicular nor parallel: INCLINED").

Defendants contend that the later two phrases in the chart above should be construed such that each strut is "independent from and does not intersect" the other. The fact that the claim lists "a first angular strut" and then separately lists "a second angular strut" supports Defendants' contention that the struts are separate structures or components, though perhaps not independent. *See Becton, Dickinson and Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention." (quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004))); *see also Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1404-05 (Fed. Cir. 1996) (concluding that where a claim provides for two separate elements, a "second portion" and a "return portion," these two elements "logically cannot be one and the same"). The term "independent" would seem to add ambiguity, however, and the fact that the struts are two separate structures or "members" is sufficiently clear from the claim language itself.

The additional limitation proposed by Defendants' that the first and second strut not intersect does not appear anywhere within the claim language, the specifications, nor the patent application. Although Defendants have taken both limitations from the Court's explanation for why it found that the Defendants' product did not literally infringe on the '723 patent in its decision denying Defendants' previous motion for summary judgment, Formax correctly points out that "claims may not be construed by reference to the accused device." *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. 2002); see also *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc) ("A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device."). I conclude that including "independent from and does not intersect" would confuse and impermissibly add limitations on the claim not supported the intrinsic evidence.

During the *Markman* hearing, there was debate about whether the phrase "central location" in the claim refers to a horizontally central location, a vertically central location, both, or either. Formax asserts that because "elevated" modifies "central," the indication is that the location of "central" is determined by reference to the vertical dimension of the former. But central defines the location, and elevated simply means the location is above the base; the language does not indicate whether the location is central on a horizontal plane, central on a vertical plane, both or either. Central, when used to indicate location, means "situated at, in, or near the center." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY, 186 (10th ed. 1999). This meaning is supported by the specification and drawings. (See '723 patent, Fig. 14.) Accordingly, the Court construes the claim language to mean that the struts extend on a slant from a rear location on the base structure forward and upwardly to an elevated location at, in or near the center of the frame.

10

### 4. Tie Rod Terms

| Term | Formax's Construction | Defendants' Construction | Court's Construction |
|------|----------------------|-------------------------|---------------------|
| tie rod(s) | Term should be given its ordinary meaning. | A rod-shaped component of the frame structure that resists tension, that is, forces that tend to pull it farther apart along its length. | structural elements that hold (or "tie") two parts of a structure together |

The sixth term at issue concerns the term "tie rod" or "tie rods." On this point, Formax has the better argument against adopting Defendants' construction. As Formax points out, Defendants' proposed construction limits the term to "resist[ing] tension." This limitation is not supported by the specification language, indicating that the tie rods resist reciprocating tensile and compressive forces caused by the horizontal movement of the mold plate. (*See* '723 Patent col. 11, lns. 9-21.) In addition, Defendants' proposed construction, "a rod-shaped component" is not supported by the specification language and does not offer improvement on the existing claim language.

I find, however, that the ordinary meaning of "tie rod" might not be immediately clear to a lay juror. Therefore, some construction is warranted. Formax contends that "'tie rods' are structural elements that hold (or 'tie') two parts of a structure together." (Formax *Markman* Br. 17.) The specification supports this interpretation, noting that tie rods "span between a backing plate that mounts a hydraulic cylinder that drives the plunger, and the pump cylinder." ('723 Patent Abstract.) The specification is the "single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. Therefore, I adopt Formax's construction that "tie rod(s)" refer to "structural elements that hold (or 'tie') two parts of a structure together."

11

**5. Terms Defendants' Contend are Indefinite**

The next set of terms concern certain characteristics of the '723 struts' ability to withstand or resist forces created by the reciprocating movement of the mold plate. The four terms at issue are stated below. In each case, Formax contends that the term should be given its ordinary meaning while Defendants claim that the term is indefinite.

| Term | Claim | Formax's Construction | Defendants' Construction | Court's Construction |
|------|-------|----------------------|-------------------------|---------------------|
| sufficiently rigid to withstand reciprocal forces caused by said reciprocating mold plate | Claims 1 and 13 | Term should be given its ordinary meaning. | Indefinite | sufficiently rigid to withstand reciprocal forces caused by said reciprocating mold plate |
| Rods having a thickness to resist a reaction force caused by said pump piston compressing food product within said pump cylinder | Claim 2 | Term should be given its ordinary meaning. | Indefinite | Rods having a thickness to resist a reaction force caused by said pump piston compressing food product within said pump cylinder |
| resisting a separation reaction force between said pump cylinder and said driving mechanism | Claim 8 | Term should be given its ordinary meaning. | Indefinite | resisting a separation reaction force between said pump cylinder and said driving mechanism |
| configured to resist a horizontal component of a reciprocating force of said mold plate | Claim 12 | Term should be given its ordinary meaning. | Indefinite | configured to resist a horizontal component of a reciprocating force of said mold plate |

Before determining whether the above terms are invalid as indefinite, it is important to note at the outset that patents are presumed valid at birth. *See Exxon research & Eng'g Co. v. U.S.*, 265 F.3d

1371, 1380 (Fed. Cir. 2001); *Orthakinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1570 (Fed. Cir. 1986). The evidentiary standard of production sufficient to overcome the presumption of validity is clear and convincing evidence. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1345 (Fed. Cir. 2007). Under 35 U.S.C. § 112, ¶ 2, definiteness is "a question[] of law with underlying factual determinations."[2] *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1299 (Fed. Cir. 2010). "If one skilled in the art would understand the bounds of the claim when read in light of the specification," then the claim will satisfy the statutory requirement for definiteness under 35 U.S.C. § 112, ¶2. *Exxon*, 265 F.3d at 1375. The statutory requirement of definiteness is not a call for absolute clarity and precision, but rather only those claims that are "'not amenable to construction' or 'insolubly ambiguous'" will fall short of § 112, ¶ 2. *Datamize, LLC v.Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). Claim language denoting some matter of degree is not indefinite so long as a person of ordinary skill in the art realizes that the determination of degree can be "easily obtained." *See Young*, 492 F.3d at 1346; *Exxon*, 265 F.3d at 1378-79; *Orthokinetics*, 806 F.2d at 1575-76.

Defendants argue that a person of skill in the art will be unable to determine "whether or not a particular machine falls within the scope of the claims." (Defs. *Markman* Br. 26.) Defendants' contentions that the above terms are indefinite boil down to an argument that one skilled in the art cannot understand the bounds of the claims because they are terms of degree. Regarding Claims 1, 2, and 13, according to Defendants, whether a strut is "sufficiently rigid" or a tie rod is of sufficient "thickness" not to fail depends on the "countless end user-specific contexts," in which the machine might be used. (*Id.* at 27.)

---

[2] Formax points out that Defendants have not presented any evidence in support of their argument that a person of skill in the art could not determine the scope of the claims at issue.

13

Formax counters that these terms of degree can be readily determined by a person of ordinary skill in the art. In support of Formax's argument, Formax points to Dr. Stephen Derby's Declaration.[3] Dr. Derby explains that a person of ordinary skill in the art would understand that the term "sufficiently rigid" is satisfied if the angular strut can transfer the forces applied to it by the reciprocating forces of the movement of the mold plate without failing. (Derby Decl. ¶ 28, ECF No. 69.) The reciprocating forces will, of course, vary depending on the size, weight, speed, etc. of the machine. But a person of ordinary skill in the art can make this determination for a given machine by "*calculating* the necessary dimensions of the strut for the desired loading condition so that it will not fail." (*Id.* ¶ 32 (emphasis added).) Because the designer will make a determination of the required dimension of the strut based on the "worst-case scenario," a person of ordinary skill in the art can make a ready calculation of the bounds of the claim. (*Id.*) The same analysis holds for Claim 2 in regard to a tie rod having sufficient "thickness." (*See id.* ¶¶ 49, 53-54.) Therefore, based on the factual determination set out by Dr. Derby, I find that the evidence does not support a conclusion that the terms are "'not amenable to construction' or 'insolubly ambiguous'" and invalid for indefiniteness. *Datamize*, 417 F.3d at 1347.

Claims 8 and 12 are not terms of degree, but rather terms denoting location and purpose. Claim 8 refers to the location of tie rods extending between the pump cylinder and the driving mechanism. The purpose of the tie rods is to "resist" the "separation reaction force" between the pump cylinder and the driving mechanism. Likewise, Claim 12 outlines that the angular strut connected to the backing

---

[3] Defendants argue that Dr. Derby's expert testimony is "of little utility in evaluating definiteness" (Defs. Reply Br. 5, ECF No. 74 (citing *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012))). *Noah Systems* stands for the proposition that expert testimony cannot "supplant the total absence of structure from the specification" because the specification itself must itself disclose the structure. The analysis of this matter is distinguishable from *Noah*; thus, Dr. Derby's testimony is relevant to the determination of definiteness here. *See Creo Prods., Inc. v. Presstek, Inc.*, 305 F.3d 1337. 1348 (Fed. Cir. 2002).

14

plate and the base structure must be "configured to resist a horizontal component of a reciprocating force of said mold plate." Thus, Claim 12 denotes that the location of the strut must "configured" between the backing plate and base structure in order to resist the forces produced by the forming machine. These two claims are not terms of degree and thus Defendant's indefiniteness challenge fails.

Based on the foregoing analysis, it necessarily follows that Defendants are not entitled to summary judgment on their claim that Claims 1, 2, 8, 12, and 13 are invalid for indefiniteness. Accordingly, their motion will be denied.

**B. "Hydraulic Cylinder" in the '723 and '743 Patents**

| Term | Formax's Construction | Defendants' Construction | Court's Construction |
|------|----------------------|--------------------------|---------------------|
| hydraulic cylinder | Term should be given its ordinary meaning. | A hydraulic cylinder is a device that applies force in a straight line and is operated by pressurized fluid. | a mechanical cylinder that uses fluid |

"Hydraulic cylinder" is a well-understood term by persons of ordinary skill in the art. ('723 Patent col. 1, lns. 44-48 ("A typical forming apparatus comprises at least one hydraulically driven pump that includes a pump piston or plunger driven into a pump cylinder *by a hydraulic cylinder* to pressurize food product.") (emphasis added).) The specifications do not include any specialized definition for "hydraulic cylinder," indicating that the patentee intended the ordinary meaning to apply. Defendants rely on three dictionary definitions in support of their proposed construction. The dictionary definitions from the Army Field Manual and the McGraw-Hill Access Science Encyclopedia for "hydraulic actuators" both indicate that hydraulic cylinders can be linear or rotary. (Defs. *Markman* Br. 17.) Thus, Defendants' proposed construction, confining the force applied to a "straight line,"

15

includes a limitation not supported by the claim language or specifications. On this basis alone, Defendants' construction must be rejected.

Nevertheless, the '723 and '743 claim language and specifications provide little guidance for a juror to know what a hydraulic cylinder is. A hydraulic cylinder is simply a mechanical cylinder that uses fluid. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1107 (2002) (cylinder is hydraulic if it is "operated, moved or effected by means of water" or more generally if it is "of or relating to water or other liquid in motion"). I therefore determine that a fair and accurate construction of the term "hydraulic cylinder" to mean "a mechanical cylinder that uses fluid." This construction will provide context for lay jurors while avoiding importation of the limitation included in Defendants' suggested construction.

## C. The '743 Patent

The claim term requiring construction in the '743 patent is a means-plus-function term under 35 U.S.C. § 112, ¶ 6. The first step of analysis in construing a means-plus-function limitation is to identify the function explicitly recited in the claim. *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1370 (Fed. Cir. 2001) (citing *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir.2001)). The second step is to identify the corresponding structure set forth in the written description that performs the particular function set forth in the claim. *Id.* Section 112, ¶ 6 does not "permit incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1257-58 (Fed. Cir.1999). Structural features that do not actually perform the recited function do not constitute corresponding structure and thus do not serve as claim limitations. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308-09 (Fed. Cir.1998).

16

| | Formax's Construction | Defendants' Construction | Court's Construction |
|---|---|---|---|
| **Term** | hydraulic pressure flow directing means, connected in at least one of the hydraulic lines, for directing and limiting flow through each of those lines to a single direction | hydraulic pressure flow directing means | hydraulic pressure flow directing means, connected in at least one of the hydraulic lines, for directing and limiting flow through each of those lines to a single direction |
| **Function** | directing and limiting flow through each of the three lines to a single direction | directing and limiting continuous, unidirectional flow of hydraulic fluid through each of the first, second, and third hydraulic lines wherein at least some hydraulic fluid completely transits from the reservoir into one end of the cylinder, from that one end of the cylinder to the other end of the cylinder, and from the other end of the cylinder back to the reservoir in each cycle of the mold plate | directing and limiting flow through each of the three lines to a single direction |
| **Structure** | a check valve or pump connected in a hydraulic line | two or more check valves or one or more pumps | a check valve or pump connected in a hydraulic line |

### 1. Function

Defendants' construction requires that *at least some* of the fluid flowing through the lines make a complete loop from the reservoir through the cylinder and back to the reservoir in each cycle of the mold plate. (Joint Claim Construction Statement 6, ECF No. 61.) Defendants' construction

17

"incorporat[es] unrecited functional limitations into the claim[]." *Micro Chem.*, 194 F.3d at 1258 (stating that 35 U.S.C. § 112, ¶ 6 "does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim."). The claim language does not support Defendants' limitation. Claim 1 of the '743 patent explains that the purpose of directing and limiting flow of fluid in a single direction is "so that hydraulic fluid is pumped from the reservoir into one end of the cylinder, from that one end of the cylinder to the other end of the cylinder, and from the other end of the cylinder back to the reservoir in each cycle of the mold plate." There is no indication from the claim term that the patentee intended a limitation that at least some fluid make a complete transit from the reservoir through the cylinder back to the reservoir in each cycle. In addition, what the specification explains is that a limited quantity of fluid is pumped during each cycle of the mold plate, in effect pushing the fluid in the line through in a single direction with the fluid ultimately recycling to the reservoir. (*See* '743 Patent col. 5, lns. 36-49, col. 6, 24-45, ECF No. 65-2.) Nowhere does the specification explain that the fluid actually makes a complete transit during a single cycle. I find that Defendants' proposed definition improperly imports an unsupported limitation to the claim and must therefore be rejected. Further, I find that Formax's construction of the function of the claim term is supported by the claim language and accordingly adopt it.

### 2. Structure

Regarding the structure, the claim term states: "hydraulic pressure flow directing means, connected in at least one of the hydraulic lines." The parties agree that this language refers to a check-valve, which is a one-way gate used to make fluid flow in one direction. (Formax *Markman* Br. 24.) Defendants point to the specification in support of their argument that the structure employs "two or more check valves." (Defs. *Markman* Br. 32-33 (citing '743 patent col. 6, lns. 49-54).) The

18

specification refers to a figure showing three separate check valves in three *separate* hydraulic lines. Defendants' seize on the specification language "one of the check valves could be eliminated" in support of their proposed construction. However, the claim language recites that a check valve must be connected in *at least one* of the hydraulic lines, not two. A patentee is entitled to the full scope of his claims; therefore, I cannot "import a limitation from the specification into the claims." *Kara Tech.*, 582 F.3d at 1348. Accordingly, I find that Defendants' proposed definition is not a fair and accurate description of the plain and ordinary meaning of the claim language. For these reasons, I adopt Formax's proposed definition of the structure to mean "a check valve or pump connected in a hydraulic line."

**D. The '644 Patent**

The parties dispute the construction of two terms of the '644 patent: "lateral and longitudinal slots," and "lateral and longitudinal grooves." These slots and grooves on the mold plate allow excess food product to flow up and over the mold plate, "providing a lubricated surface for the mold plate to glide against as it travels back and forth." (Formax *Markman* Br. 26.)

| Term | Formax's Construction | Defendants' Construction | Court's Construction |
|------|----------------------|--------------------------|---------------------|
| lateral slot(s) | Term should be given its ordinary meaning. | A hole in the mold plate that is shorter in the direction of the reciprocal motion of the mold plate than it is in the perpendicular direction. | lateral slot(s) |
| longitudinal slot(s) | Term should be given its ordinary meaning. | A hole in the mold plate that is longer in the direction of the reciprocal motion of the mold plate than it is in the perpendicular direction. | longitudinal slot(s) |

19

| lateral groove(s) | Term should be given its ordinary meaning. | An indentation in the mold plate that is shorter in the direction of the reciprocal motion of the mold plate than it is in the perpendicular direction. | lateral groove(s) |
|---|---|---|---|
| longitudinal groove(s) | Term should be given its ordinary meaning. | An indentation in the mold plate that is longer in the direction of the reciprocal motion of the mold plate than it is in the perpendicular direction. | longitudinal groove(s) |

Claim 1 recites that a "slot . . . penetrates through a thickness of the mold plate," indicating a hole for food product to flow through. ('644 Patent, ECF No. 65-3.) Although there is not a specific definition for a groove in the claim terms, the specification illustrates that the "depressions or grooves on the surface of the mold plate facing the breather plate . . . serve to distribute the pressurized food material across the width of the mold plate." (*Id.* at col. 2, lns. 12-16.) The obvious implication is that the grooves, contrasted with the slots, do not allow food to pass through the mold plate. The claim and specification language is clear and does not warrant further construction. Furthermore, Defendants' proposed constructions import size dimensions for the slots and grooves (i.e., "shorter" and "longer") that are unsupported by the claim terms or specifications.

"Longitudinal" is defined in claim 1 as the same orientation as the reciprocating movement of the mold plate. ('644 Patent (stating that the "mold plate reciprocates in a longitudinal direction").) By implication, "lateral" is defined as perpendicular to the longitudinal direction of the mold plate movement. Longitudinal and lateral have the same clear meanings from the patent as mentioned above for the "slot" and "groove" terms. Defendants' proposed definitions for the four terms would not serve to improve the claim language and accordingly, I decline to adopt them.

20

**CONCLUSION**

The disputed claim language is construed as noted in the far right hand column of each above chart where indicated for the reasons set forth above.  In regard to claims 1, 2, 8, 12, and 13 of the '723 patent, Defendants' motion for summary judgment that the claim terms are invalid for indefiniteness is DENIED.

**SO ORDERED** this __7th__ day of September, 2012.


  s/ William C. Griesbach
William C. Griesbach
United States District Judge