UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FORMAX INC.,

        Plaintiff,

  v.                                              Case No. 11-C-0298

ALKAR-RAPIDPAK-MP EQUIPMENT INC.
and TOMAHAWK MANUFACTURING INC.,

        Defendants.

---

**ORDER PARTIALLY GRANTING MOTION TO COMPEL
AND GRANTING MOTION FOR LEAVE TO AMEND**

---

In this patent infringement action, Formax Inc. asserts that several food patty molding machines and related products sold by Alkar-Rapidpak-MP Equipment, Inc. and Tomahawk Manufacturing, Inc. infringe Formax's U.S. Patent Nos. 4,996,743 (the '743 patent), 7,318,723 (the '723 patent), and 7,591,644. Before me now are two motions concerning Formax's claims as to the '743 and the '723 patents. Formax has brought a motion to compel certain information related to the '743 patent, and the defendants have filed a motion to amend their answer to include an affirmative defense and counterclaim of inequitable conduct against Formax relating to the '723 patent. For the reasons that follow, the motion to compel will be granted in part, and the motion to amend the pleadings will be granted.

**A.    Motion to Compel**

Formax seeks to compel the defendants to disclose privileged information related to the '743 patent. Formax contends that during the March 7, 2013 Rule 30(b)(6) deposition of Tomahawk's Robert Tournour, the defendants waived privilege as to all pre-lawsuit communications or

information related to the validity of Formax's '743 patent. Formax argues that Defendants waived privilege when they disclosed a redacted January 18, 2002 letter written by Attorney Donald Cayen to Tournour in which Cayen wrote that the '743 patent had expired because Formax failed to pay a maintenance fee. In addition, Formax asserts that the defendants disclosed the substance of a 2009 communication in which the defendants' litigation attorneys informed them that Cayen's 2002 letter was wrong because the '743 patent had not, in fact, expired. Because Tournour also testified that Defendants are relying on an advice of counsel defense to willful infringement, Formax believes that the defendants broadly waived privilege as to all pre-lawsuit communications relating to the '743 patent.

Generally, where a party relies on an opinion of counsel as part of a defense to an allegation of willful infringement, it waives privilege as to the opinion. *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006). The attorney-client privilege belongs to the client, who alone may waive it. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007). The question of whether and to what extent the attorney-client privilege or work product immunity has been waived involves substantial issues of patent law and therefore, this Court applies Federal Circuit law to analyze the scope of a waiver. *In re EchoStar*, 448 F.3d at 1298. "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). Waiver extends not only to opinions on which the party intends to rely, but also to all related communications and documents relied upon or considered in connection with the opinion. *In re EchoStar*, 448 F.3d at 1304. "This broad scope is grounded in principles of fairness and serves to prevent a party from simultaneously using the privilege as both a sword and a shield; that is, it prevents the inequitable result of a party disclosing

2

favorable communications while asserting the privilege as to less favorable ones." *In re Seagate*, 497 F.3d at 1372; *Fort James*, 412 F.3d at 1349 ("The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not."). There is no bright-line test for determining what constitutes the subject matter of a waiver. *In re Seagate*, 497 F.3d at 1372. Courts weigh the circumstances of the disclosure, the nature of the legal advice sought, and the prejudice to the parties of permitting or prohibiting further disclosures. *Id.*

Defendants state that they are not asserting an advice of counsel defense and contend that the January 18, 2002 letter from Cayen to Tournour is not an infringement opinion letter with regard to the '743 patent. To the contrary, they claim it mentions the '743 patent once and contains no opinion whatsoever on the issue of infringement with regard to the '743 patent. The letter was an omnibus letter that contained advice regarding numerous other unasserted patents for the purpose of "investigat[ing] the patent questions that would be involved if Tomahawk Manufacturing were to design and build its own meat patty machines." (Dunn Decl. Ex. 4, ECF No. 87-4.) The portion of the letter that was disclosed to Formax, and upon which Formax bases its waiver argument, states: "I learned from the Patent Office that patent 4,996,743 has been allowed by Formax to expire for failing to pay the eighth-year maintenance fee." (*Id.*)

Defendants also assert that they did not waive privilege by disclosing the 2009 communication referenced during the deposition of Tournour. During the deposition, the following exchange took place:

> Q. Have you [hired any other counsel to assess whether or not the '743 patent was expired] since [receiving Cayen's 2002 letter]?
> A. It came to light in 2009 by litigation counsel that it did not expire.
> Q. After you received [the Cayen] letter, did you change your conduct in any way with respect to the machines you were designing or rebuilding?
> A. Well, I went on his advice here, assuming this patent had expired, to use it.

3

(Dunn Decl. Ex. 5, Tournour Dep. 330, ECF No. 87-5.) Tournour then explained again that he learned in 2009 from his litigation counsel that the Cayen letter he had relied on was wrong as to whether the '743 patent expired. (*Id.* at 331.)

Defendants contend that the disclosed communications were not privileged because they conveyed mere factual assertions–that in 2002, Cayen learned from the PTO that the '743 patent had expired, and that in 2009, Defendants learned that this information was incorrect. Consequently, the disclosed communications essentially indicate that from 2002 to 2009, Tournour was under the impression that Formax's '743 patent was expired and therefore invalid. As a result, they contend that revealing these communications did not constitute a waiver of privilege, and the communications, while relevant evidence as to willful infringement, do not constitute an advice of counsel defense. Defendants argue that the communications relate exclusively to a non-privileged factual question: whether their patent counsel informed them that the '743 patent had expired because Formax failed to timely pay its maintenance fees. They contend that this information was not presented as advice or opinion, and did not constitute an attorney's mental impressions; therefore, there is no basis for finding it is privileged.

Defendants construe too narrowly the nature of the disclosed communications. But Formax also describes too broadly the scope of the waiver. Even if the Defendants are not relying on an advice of counsel defense, Tournour intentionally disclosed information concerning communications he had with counsel regarding the expiration of the '743 patent. However, he only did so after the parties agreed to a "limited waiver . . . with respect to Mr. Tournour and Tomahawk's communications with Donald Cayen" that would not extend to Tournour's conversations with attorneys involved in this litigation. (Dunn Decl. Ex. 5, Tournour Dep. 325-26, ECF No. 87-5.) Thus, the disclosure has been limited to the issue of whether the '743 patent

expired, and privilege has only been waived as to that narrow subject matter. Moreover, such waiver does not extend to trial counsel in this case. *In re Seagate*, 497 F.3d at 1375 (holding that as a general rule, "assserting the advice of counsel defense and disclosing opinions of opinion counsel do not constitute waiver of the attorney-client privilege for communications with trial counsel" absent chicanery or other unique circumstances). This conclusion is bolstered by the fact that the parties agreed to the narrow waiver during Tournour's deposition. In addition, Defendants contend that they do not intend to rely any of the attorney-client communications as the basis for an advice-of-counsel defense to a willful infringement claim, and therefore, they are not selectively seeking to use privileged information both as a sword and a shield. Accordingly, Defendants are ordered to produce pre-litigation privileged documents related only to issue of whether the '743 patent expired, but they may redact any portions of such documents that reveal attorney's thoughts, impressions, and the like not related to the limited scope of the waiver.

**B.     Motion for Leave to File a First Amended Answer**

Defendants also seek leave to file a first amended answer to add an affirmative defense and counterclaim of inequitable conduct against Formax. Defendants assert that they have recently learned that Formax withheld material information about Formax's own prior art machines from the United States Patent and Trademark Office (PTO) during the prosecution of the '723 patent. Defendants allege that Formax failed to disclose to the PTO that at least two of Formax's own machines, the F-6 and F-19 formers, have all the elements described in claim 8 of the '723 patent. In particular, Defendants contend that the machines include tie rods used in the same location and manner as claimed in the '723 patent, and therefore, disclosure of the F-6 and F-19 tie rods would have rendered at least claim 8 unpatentable. Defendants also argue that Formax affirmatively argued to the PTO that claim 8 was novel over prior art based on its use of tie rods despite the fact

5

that Formax inventors were aware that Formax had already been selling machines with the very same elements for more than 10 years. They claim that Formax's prosecuting attorney and the named inventors on the '723 patent were all aware of the use of the claimed elements prior to filing the '723 application, and therefore, their only motivation for withholding the relevant information was that they believed that the PTO would not have granted claim 8 of the '723 application if those references had been fully disclosed. Defendants further allege that they only learned of all the circumstances constituting the alleged inequitable conduct within three weeks of filing their motion for leave to amend.

Inequitable conduct, as a fraud-based concept, is subject to the heightened pleading standard under Rule 9(b) and must be pled with particularity. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). "[T]o plead the circumstances of inequitable conduct with the requisite particularity under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* Although knowledge and intent typically may be pled generally, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329, n.5.

Formax contends that Defendants have failed to adequately plead inequitable conduct, and their proposed amendment would be futile under *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc). To prevail on a claim of inequitable conduct, the accused

6

Case 1:11-cv-00298-WCG   Filed 05/29/13   Page 6 of 12   Document 106

infringer must prove by clear and convincing evidence that the patentee acted with the specific intent to deceive the PTO by withholding a material reference. *Id.* at 1290-91. Formax contends that *Therasense* created a heightened standard of proof for finding intent and materiality, and argues Defendants have failed to meet this demanding standard. In general, pleading standards are more relaxed than proof standards. The heightened standard announced in *Therasense* does not apply to the pleading stage and did not overrule *Exergen*'s pleading requirements. *See Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (applying *Exergen Corp.* standard on a motion to dismiss); *Milwaukee Elec. Tool Corp. v. Hitachi Koki Co., Ltd.*, 09-C-948, 2012 WL 1952977 (E.D. Wis. May 29, 2012); *Sloan Valve Co. v. Zurn Indus.*, No. 10-cv-204, 2012 WL 1108129, at *4 (N.D. Ill. Apr. 1, 2012) ("*Therasense* did not address inequitable conduct claims at the pleading stage, nor did it override *Exergen*'s pleading requirements.").

Nevertheless, even if Defendants have satisfied the requirements for pleading under 9(b), because they seek to amend their answer after the time for doing so has passed, the court assesses whether there is good cause to allow the amendment. Generally, a motion for leave to amend is evaluated under Federal Rule of Civil Procedure 15(a)(2), which provides that courts "should freely give leave when justice so requires." *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). But when a party seeks to amend the pleadings after the time for doing so has passed as determined by the court's scheduling order, a two-step process applies. First, a court is entitled to apply the heightened good-cause standard of Rule 16(b)(4). *Id.* Then, the court considers whether the proposed amendment should be allowed under Rule 15(a)(2), which provides that leave to amend may not be appropriate where the amendment may cause undue delay or prejudice or where it would be futile. *Id.* "[A]mong the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case 'moving toward trial.'" *Id.* at 720. Thus, the "tigten[ed] . . . standards for

7

finding both intent and materiality" announced in *Therasense* are relevant here to the court's analysis of whether the proposed amendment would be futile. 649 F.3d at 1290.

Defendants allege that prior to the prosecution of the '723 patent, Formax's inventors and prosecuting attorney knowingly failed to disclose to the PTO that Formax's F-6 and F-19 formers used tie rods in the same location and manner claimed in claim 8 of the '723 patent. They specifically allege that the machines used tie rods that extended between the formers' pump cylinder and driving mechanism, and that these tie rods resisted a separation reaction force between the cylinder and driving mechanism. Formax responds that it did, in fact, disclose both the F-6 and F-19 formers in its patent application. In addition, it points out that among the patents disclosed in Formax's Information Disclosure Statement (IDS) is U.S. Patent 4,054,967, which illustrates the tie rods used in the F-19 former and describes their connection. Also included in the "non-patent literature" identified in the IDS was a six-page excerpt of an F-6 former brochure which appears to have contained several figures without description, some of which illustrate tie rods. Additionally, the '723 patent specifically names both the F-6 and F-19 machines as prior known high-speed molding machines.

Defendants allege that although Formax listed several patents and non-patent literature in its IDS, none of the references disclosed to the PTO identified or described the use of tie rods in the location and manner in which they are used on the F-6 or F-19 formers. Defendants point to the fact that Formax failed to disclose the Bill of Materials for the F-6 and F-19 formers, which included a list of component parts, among them tie rods. Defendants also cite the deposition testimony of the '723 inventors, all of whom had firsthand knowledge of the workings of the F-6 and/or F-19 machines. At least two of the inventors testified that the tie rods used in these machines resisted a separation reaction force between a pump cylinder and driving mechanism. (*See* Defs.' Motion

8

to Amend, Ex. D, David Hansen Dep. 48-49, 129, ECF No. 83-6; *id.* Ex. G, Salvatore Lamartino Dep. 181, ECF No. 83-9.)

Defendants also point to the fact that the PTO issued a non-final rejection of claim 8 of the '723 patent as anticipated by prior art based on a reference ("the Richards reference") that appeared to show the use of tie rods exactly as described in claim 8. In a Request for Reconsideration of the rejection, Formax's attorney distinguished the Richards reference, arguing it did not disclose tie rods as claimed–rather, he characterized the rod in the Richards reference as a control rod not serving a structural function supporting the pump cylinder and drive mechanism like the tie rods described in claim 8. The PTO accepted Formax's characterization and then issued a Notice of Allowability for the '723 application, withdrawing the prior rejection. The Notice of Allowability specifically stated that "prior art fails to teach, either alone or in combination, a frame structure for a food product forming apparatus, where there is a plurality of tie rods extending between said pump cylinder and said driving mechanism, said tie rods resisting a separation reaction force between said pump cylinder and said driving mechanism." Defendants contend that the PTO's actions demonstrate that had it known about the F-6 and F-19 tie rods, it would surely not have allowed claim 8.

Although Formax did disclose, at least to some extent, both the F-6 and the F-19 formers, the allegations of the amended answer and counterclaim Defendants have proposed are sufficient to support an inequitable conduct claim. Formax's attorney owed a duty of candor and good faith to the PTO such that even if the F-6 and F-19 formers were identified in the submissions to the PTO, a reasonable jury could find that the disclosures were incomplete. *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007) ("Applicants for patents have a duty to prosecute patent applications in the Patent Office with candor, good faith, and honesty.").

9

A breach of the duty of candor and good faith before the PTO includes affirmative misrepresentations of material facts, but also failure to disclose material information. *Id.*; *see also Golden Hour Data Sys., Inc. v. emsCharts, Inc.*, 614 F.3d 1367, 1374 (Fed. Cir. 2010) ("The PTO rules clearly require the submission of known information that contradicts material information already submitted to the PTO."). The duty applies to each individual associated with the filing and prosecution of a patent application, including inventors and attorneys or agents who prepare or prosecute the patent application. *See* 37 C.F.R. § 1.56.

In evaluating the '723 application, the PTO was explicitly concerned with prior art references using tie rods which resist a separation reaction force between the pump cylinder and driving mechanism. The inventors testified that they were aware that Formax's own F-6 and/or F-19 machines utilized tie rods in essentially this same location and manner on similar food patty molding machines. Had Formax previously believed that it had adequately disclosed its formers by identifying the machines, the '967 patent, and the F-6 brochure, it was on notice after the PTO's non-final rejection of Claim 8 that to the extent that the F-6 and F-19 formers were utilizing tie rods in the same manner as claimed in the '723 application, it had failed to adequately inform the PTO of that fact. *See Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1230 (Fed. Cir. 2007) (allowing inequitable conduct claim where plaintiff submitted affidavits in support of patentability without informing the examiner of the affiant's relationship to plaintiff because "[e]ven though the examiner did not raise a question concerning any such relationship, it is material to an examiner's evaluation of the credibility and content of the affidavits" and the failure to disclose therefore violated the duty of disclosure). Yet, Formax affirmatively argued to the PTO that claim 8 was novel over prior art based on the use of tie rods that its inventors knew was virtually identical to its own F-6 and F-19

formers. Formax's attorney only distinguished the Richards reference, while saying nothing of the similar use of tie rods in the F-6 and F-19 formers.

As a result, it is reasonable to conclude that the information alleged to be purposely withheld was not cumulative because none of the disclosed information showed that the F-6 and F-19 formers had tie rods that resisted a separation reaction force between the pump cylinder and drive mechanism. Moreover, as evidenced by the PTO's non-final rejection and later Notice of Allowability, disclosing the manner and use of the F-6 and F-19 tie rods would have been material. In addition, if Defendants' allegations are taken as true–as they must at this stage–a reasonable jury could infer that Formax knew and appreciated the manner in which tie rods were used in the F-6 and F-19 formers, but specifically intended to mislead the PTO by providing incomplete disclosures which concealed key aspects of the prior art. Therefore, even though amendment to add an inequitable conduct claim at this late stage in the proceedings is discouraged, Defendants have met their burden here. Because the proposed amendment does not appear futile, and because Defendants have made a sufficient showing to satisfy the court there is good cause to insert an inequitable conduct claim into the litigation, the motion to amend will be granted.

It should also be noted that Defendants' motion does not appear to be untimely, as they brought the motion within a few weeks of taking the depositions of the '723 patent inventors. Allegations of inequitable conduct are often based on information uniquely within the possession of the patentee, and often cannot be brought until after significant discovery has been completed. Similarly, although the Court recognizes the gravity of a claim of inequitable conduct, *see Therasense*, 649 F.3d at 1288-90, Formax will not be unduly prejudiced here. Formax contends that it no longer has the opportunity to allow its inventors the opportunity to explain that they did disclose the tie rods that Defendants argue they did not. As explained, however, the question is not

11

whether, but to what extent the tie rods were disclosed. Moreover, Formax does not explain to whom the inventors disclosed this information or why they cannot otherwise develop this evidence, as the matters they identify concern the knowledge and understanding of their own inventors. Formax also makes a one-sentence argument that it would have sought admissions regarding materiality and whether the references sent to the PTO disclosed tie rods, but it is not reasonable to expect that it would receive any such admission in light of the defendants' allegations in the proposed amended answer. Therefore, the defendants' motion to amend their answer to allege inequitable conduct will be granted.

## CONCLUSION

Based on the foregoing, Formax's motion to compel (ECF No. 86) is **granted in part**. Defendants are ordered to produce only pre-litigation privileged documents related to the narrow issue of whether the '743 patent expired, but they may redact any portions of such documents that reveal attorney's thoughts, impressions, and the like not related to the limited scope of the waiver. In addition, Defendants' motion to amend their answer to include an affirmative defense and counterclaim of inequitable conduct against Formax relating to the '723 patent (ECF No. 83) is **granted**. The proposed amended answer shall be filed accordingly.

Dated this  29th  day of May, 2013.

                                              s/ William C. Griesbach
                                             William C. Griesbach, Chief Judge
                                             United States District Court