UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FORMAX, INC.,

        Plaintiff,

v.                                                 Case No. 11-C-298

ALKAR-RAPIDPAK-MP EQUIPMENT, INC.
and TOMAHAWK MANUFACTURING, INC.,

        Defendants.

**DECISION AND ORDER**

Defendants Alkar-Rapidpak-MP and Tomahawk Manufacturing have filed a motion seeking a partial summary judgment ruling that they did not wilfully infringe U.S. Patent No. 4,996,743. For the reasons given below, the motion will be denied.

**I. Background**

Because the present motion involves the limited question of willfulness, the operative facts are brief. The '743 patent (now expired) describes a "mold plate drive linkage for a food patty molding machine." Formax has accused five of the defendants' food patty molding machines of using a connecting rod that infringes the '743 patent. Prior to using these connecting rods in the building of its own machines, Tomahawk sought advice from its patent counsel, Donald Cayen. Cayen responded with a letter dated January 18, 2002. (ECF No. 158-5.) In the letter, Cayen counseled that although Formax owned several patents with relevant technology, the '743 patent

"has been allowed to expire for failing to pay the eighth-year maintenance fee." (*Id.*) The defendants argue that Tomahawk relied on this information in proceeding with the technology they developed and used. They also argue that they have arguable defenses to infringement and validity, either of which would undermine the notion that their conduct was willful.

**II. Analysis**

Summary judgment is proper when the moving party has demonstrated that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Establishing that a defendant has willfully infringed a valid patent is a two-step inquiry. First, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). After the "threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." *Id.* The threshold objective prong" is a question of law based on underlying questions of law and fact and is subject to de novo review." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.,* 682 F.3d 1003, 1005 (Fed. Cir. 2012). The second prong, which is largely subjective, is a question of fact. *Id.*

**A. Objective Component**

Defendants argue that they have objectively reasonable defenses to infringement, and these defenses—even if ultimately unsuccessful—undermine any claim that their infringement was willful.

2

**1. Claim Construction**

In their *Markman* briefing, Defendants argued that the claims of the '743 patent require hydraulic fluid to transit from the reservoir into both ends of the cylinder and then back into the reservoir in each cycle of the mold plate. This court rejected that construction, noting that "nowhere does the specification explain that the fluid actually makes a complete transit during a single cycle." (ECF No. 78 at 18.) Thus, I found that "Defendants' proposed definition improperly imports an unsupported limitation to the claim and must therefore be rejected." (*Id.*)

Although their claim construction was rejected, the defendants argue that it was a good faith reading of the claim terms that entitled them to proceed with at least a fair chance that they were not infringing Formax's patent. "A defendant may get off the [willfulness] hook under *In re Seagate* by identifying an objectively reasonable defense, even if the court ultimately disagrees with the defense." *Riddell, Inc. v. Schutt Sports, Inc.,* 724 F. Supp. 2d 981, 999 -1000 (W.D.Wis. 2010).

The problem with the defendants' argument is that it essentially equates compliance with Rule 11 to non-willfulness. Fed. R. Civ. P. 11. That is, the defendants seem to argue that as long as they had a non-frivolous defense (via their claim construction arguments), that is enough to let them "off the hook." *Id.* The *Seagate* standard is not so loose, however. Under *Seagate,* objective recklessness requires an objectively high *likelihood* that the infringer's actions constituted infringement—not a guarantee. 497 F.3d at 1371. A "high likelihood" falls somewhere between an obvious, brazen infringement and one that is a close call. Just as in criminal law the term "reckless" means something between negligent and intentional misconduct, in civil cases a person is reckless when he "acts . . . in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (citations omitted).

3

Here, I rejected the defendants' proposed claim construction and considered it a weak attempt to insert limitations from the specification into the claim terms. (ECF No. 78 at 17-18.) Although restricting claim terms in such a fashion is a commonplace effort waged by accused infringers, patent attorneys know very well that the Federal Circuit has repeatedly cautioned against this in no uncertain terms. *Texas Digital Systems, Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1203-04 (Fed. Cir. 2002). The defendants' effort was no more than a run-of-the-mill limiting argument tailored to achieving a specific outcome (non-infringement), and although it was not frivolous I do not view it as one that had a reasonable chance of success in any court. The defendants' precedent to the contrary involves cases where the question was "relatively close," or arguable, and thus I do not view it as persuasive under these circumstances. *Wisconsin Alumni Research Foundation v. Intel Corp.,* 656 F. Supp. 2d 898, 924 (W.D.Wis. 2009). Accordingly, the fact that Defendants had an argument in this case does not mean there was not also a "high likelihood" of infringement. *Saint-Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.,* 707 F. Supp. 2d 737, 748 (N.D.Ohio 2010) (rejecting post-verdict challenge to jury's willfulness finding)("Because the Court would have had to contravene a cardinal principle of claim construction to adopt Xinyi's construction, namely to import limitations not found in the claims, the Court cannot find that Xinyi's position was reasonable.")

**2. Obviousness**

Defendants also argue that they have a strong argument that the patent is invalid for obviousness. Specifically, they have retained an expert engineering professor, who opines that the claims of the patent would have been obvious to one of ordinary skill because the patent solved well-known engineering problems in a routine, well-known fashion. (ECF No. 158-18, 158-20.)

4

Defendants suggest that because Plaintiffs have not moved for summary judgment on the obviousness question, even the Plaintiffs have implicitly conceded that the point is arguable and not subject to resolution without a trial. As such, given that they had an arguable case for invalidity, they cannot be said to have willfully infringed the patent.

A claim is invalid for obviousness if, to one of ordinary skill in the pertinent art, "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made . . . ." 35 U.S.C. § 103(a). Although obviousness is a question of law, it is one based on underlying findings of fact. *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 427 (2007).

Here, Plaintiffs have retained an expert of their own, who disputes the defendants' expert's conclusions. It is therefore true that there is a classic "battle of experts," as the defendants point out. But it does not follow that the mere existence of a "battle" renders infringement non-willful. Presumably one could hire an expert to say just about anything, and that would not be enough to win *judgment* on the question of willfulness. That is, the fact that there is a difference of opinion does not *ipso facto* render that difference a reasonable one; one side could be clearly right and the other clearly wrong. Without a thorough review of the experts' positions and the other prior art—which the parties do not even attempt at this stage—it is impossible to conclude that summary judgment of non-willfulness should be entered.

**B. Subjective Factors**

As noted above, the first part of the analysis considers, objectively, whether a defendant's conduct was reckless. The second part of the analysis looks at a defendant's subjective, i.e., *actual*, state of mind to determine whether its conduct was reasonable.

5

**1. Cayen Letter**

Defendants rely on the 2002 letter from Atty. Cayen indicating that the '743 patent "has been allowed to expire for failing to pay the eighth-year maintenance fee." (ECF No. 158-5.) Given this apparent green light from Tomahawk's patent attorney, the defendants argue they can hardly be blamed for proceeding under the belief that there would be no infringement of the '743 patent. Formax argues, however, that accepting the defendants' position would reward them for burying their head in the sand and blinding themselves to the truth, which is that the '743 patent had been very much alive the entire time. Formax notes that Tomahawk frequently checked the intellectual property of its competitors, and the viability of the '743 patent was something easily discoverable on the PTO's own website.

Formax is correct, at least at this stage of the proceedings. Suppose an attorney wrote a letter containing erroneous information, but then the client later learned the information was wrong and that it *was* at risk for infringement. The client then proceeded to infringe anyway. No one would argue, under those circumstances, that the defendant was insulated from willfulness simply because it was in possession of an old letter from counsel containing erroneous information. The point is that the mere existence of a letter documenting an erroneous communication does not, in itself, insulate a party from willfulness. Of course the letter will be evidence—perhaps strong evidence—that the infringement was not willful. But it is by no means dispositive of the point. Here, the infringement damages period is roughly three years between late 2006 to early 2010, and Cayen's letter was dated January 18, 2002—a half-decade earlier. (ECF No. 158-5.) There was thus ample time in the interim for the defendants to have discovered the error. Moreover, the nature of the Cayen's statement is not one that lends itself to clear immunity. His statement was not legal

6

advice rendered after a thorough analysis; instead, it was simply a factual assertion indicating that Formax had failed to pay the maintenance fee. A jury might believe that the defendants were subjectively unaware of the risk of infringement because they relied solely on their attorney's factual statement.[1] But they would not be *compelled* to find that Tomahawk robotically relied on a dated statement from patent counsel during the entirety of the period in question.

Most telling is the fact that there is no evidence in the record that Tomahawk actually *did* rely on the Cayen letter. Tomahawk argues that after it received the letter, "it reasonably concluded that it could practice the technology claimed in the '743 patent without risk of infringement," but it does not cite any actual evidence to support that statement. (ECF No. 154 at 23.)[2] With no evidence that Tomahawk actually relied on the letter, all we have at this stage is a piece of paper that might or might not be relevant to the question of willfulness. Accordingly, the letter cannot be a basis to grant summary judgment.

**2. Failure to Notify**

Defendants also argue that Formax sat on its rights too long. Formax did not give notice of infringement until December 2011, even though the defendants had been advertising and selling the

---

[1] Plaintiff argues that *Seagate's* subjective prong is satisfied here because it applies only to objectively known *risks* of infringement that the defendant might subjectively have known. (ECF No. 181 at 32-33.) Here, there was no "risk" at all because there was never any legitimate question that the patent was enforceable. That is, because the patent's enforceability was a *certainty*, not a risk, the defendants' subjective state of mind is irrelevant to the *Seagate* analysis.

But that reads *Seagate* too narrowly. Under the plain meaning of the word "willful," a defendant may escape liability if it had a *bona fide* and reasonable belief that a previously enforceable patent had expired. There is no indication in *Seagate* or elsewhere that its subjective component must be linked only to "risks" rather than matters of fact.

[2] It cites an Exhibit 10 at 313 and 330, but the only Exhibit 10 it filed (ECF No. 159) is excerpts from a deposition of Robert Tournour that does not include the referenced pages.

products for a decade or more. Most telling is that Formax accused Defendants of infringing *other* patents, but did not mention the '743 patent until much later. This led the defendants to believe that they were free of any infringement worries. "Considering that DuPont/Sterling and Agfa openly sold their products and received no accusations of infringement between 1995 and 2001 despite Kodak's testing of at least Cronex 10T, it cannot be said that they proceeded objectively recklessly in disregard of the patents." *Eastman Kodak Co. V. Agfa-Gevaert N.V.,* 560 F.Supp.2d 227, 305 (W.D.N.Y. 2008).

Although the defendants rely on *Eastman Kodak,* that decision was issued after a seven-day trial. Nowhere in that opinion does it suggest that, as a matter of law, a defendant cannot be a willful infringer if the patent holder does not give notice of infringement for a given number of years. What the defendants actually knew is a question of fact and must be assessed based on all of the circumstances. Moreover, the defendants in *Eastman* knew that the patent holder *knew* about their product but nevertheless failed to bring suit for several years. "Kodak notified DuPont in 1995 about Cronex 10T, the parties met, Kodak sampled the product, and it was not until 2001 that Kodak again claimed Cronex 10T as then manufactured infringed." *Id.* Here, there is no indication that (1) Formax knew of the infringement for a lengthy period of time; and (2) Tomahawk knew that Formax knew. Accordingly, I conclude that factual issues remain to be resolved at trial.

### 3. Failure to Mark

Defendants argue that Formax failed to mark its products embodying the '743 patent, and this absence of marking supported their belief that the patent was no longer being protected. They assert that the first time they saw a Formax machine marked with the '743 patent was in 2009, and thus they reasonably assumed that Formax's patent was no longer live.

Although this might constitute evidence of non-willfulness, it is no more dispositive of the question than any of the other evidence cited above. In addition, as Formax points out, there is no evidence about the defendants' subjective state of mind prior to actually seeing a '743-marked machine. That is, although they may not have *seen* a marked product prior to 2009, they could have known that such products existed. In sum, nothing about Formax's marking practices compels a finding that the defendants' conduct was not willful.

**4. Connecting Rods from Vickers and B&T**

Finally, the defendants argue that they did not manufacture the allegedly infringing connecting rods themselves. Instead, they bought them from companies called Vickers and B&T. Because they bought the products rather than manufactured them, they could reasonably have presumed that the products were free from infringement risk. In addition, B&T's president (a former Formax employee) allegedly told them that he owned a different patent that covered the connecting rods.

But once again, this is simply evidence that might persuade a factfinder that the defendants reasonably believed they were not infringing Formax's patent. It would be reversible error to grant summary judgment to a defendant merely on the basis that the defendant was a user of technology rather than a producer, or that someone had told it that the product was covered by a different patent. Although those facts could be considered by a jury in finding a lack of willfulness, they certainly do not warrant judgment as a matter of law.

**C. Motions to Seal**

The parties have filed a number of motions to seal various documents on the grounds that their disclosure would release sensitive trade secrets and other confidential information. "[T]hose

9

documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Intern., Inc. v. Abbott Laboratories,* 297 F.3d 544, 545 (7th Cir. 2002) (Easterbrook, J., in chambers). Neither bare assertions of confidentiality, nor the agreement of the parties, is enough to warrant sealing documents.

Here, the documents include information about royalty rates, pricing, sales strategies, design and customers. The motions will be granted in large part, because these documents reveal trade secrets and other confidential business information that are not material to the merits of the case. The motion to seal the reply brief and the expert damages report, however, will be denied. The motion asks to seal the entire 85-page report of Vincent Thomas, CPA, but review of the report indicates that it is not entirely comprised of confidential information. Damages are a key component of any civil action, and thus the underlying evidence must be largely open to public scrutiny. Portions of the report might be subject to sealing, but not the report in its entirety. Similarly, an entire reply brief cannot be sealed absent unusual circumstances. Even if it is true that it contains confidential information, that information may be redacted. As noted in the comment to General Local Rule 79, "the motion to seal should be limited to that portion of the material necessary to protect the movant from the harm that may result from disclosure." Comment to General L.R. 79.

The motions to seal [155, 172, 177, 198] are **GRANTED**. The following documents are to be sealed:

Exhibits 10, 11, 12, 15, 17, 23 and 28 (ECF No. 159)

Exhibits 5, 7, 12, 14, 16, 18, 21, 22, 26 and 31 (ECF No. 176)

The following documents may be filed in redacted version: Exhibits 3, 40, 41, and 42 (ECF No. 176). Formax's opposition filings may also be filed in redacted form.

**III. Conclusion**

For the reasons given above, the motion for partial summary judgment is **DENIED**. The motions to seal [155, 172, 177 and 198] are **GRANTED**. The motion to seal [191] is **DENIED** without prejudice.

**SO ORDERED** this   26th   day of June, 2014.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court