UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FORMAX, INC.,

        Plaintiff,

v.                                                  Case No. 11-C-298

ALKAR-RAPIDPAK-MP EQUIPMENT, INC.
and TOMAHAWK MANUFACTURING, INC.,

        Defendants.

**DECISION AND ORDER**

Both sides have filed numerous motions *in limine* in advance of their July trial. At the final pretrial conference, I decided many of the motions from the bench. Remaining are the more substantial motions, which I address herein.

**1. Formax's First *Daubert* Motion to Preclude Evidence from Vincent Thomas [ECF No. 224]**

Formax argues that the Defendants' expert, Vincent Thomas, operated under a misapprehension of the proper law when he formulated his opinions. Specifically, the existence of a non-infringing alternative to the patented technology may be a factor in determining damages. Lost-profits damages are appropriate whenever there is a "reasonable probability that, 'but for' the infringement, [the patentee] would have made the sales that were made by the infringer." *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed.Cir.1995) (en banc). Part of the but-for test for causation requires the patentee to show that there was an absence of acceptable noninfringing alternatives. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir.1978).

That is, in order to show that the patentee would have made the sales that the infringer made, the patentee must show that the customers would have had no other alternatives, i.e., that their only option would have been to buy the patentee's product.

Formax argues that Thomas failed to understand the legal meaning of non-infringing alternatives. Specifically, Thomas opined that a non-infringing alternative would have been a tank-style connective rod in the drive linkage of a food patty forming machine. Bot Formax notes that the very purpose of the patent-in-suit is to *improve* upon the tank-style rod. The tank-style rod is prior art, whereas the "principal object" of the '743 patent was to overcome the shortcomings of the prior art. (ECF No. 221-21, col. 2:10.) Thus, when the very purpose of the patent was to improve upon a given technology, that technology cannot be said to be a non-infringing alternative.

Plaintiff's objections are essentially three-fold. First, as noted above, it argues that Thomas simply got it wrong in basing his calculations on the assumption that tank-style prior art was a non-infringing alternative. Second, it argues that Thomas is an economics and finance expert with an economics degree and an MBA, and as such he is not even qualified to opine on what non-infringing alternatives might be. (ECF No. 225 at 5.) Finally, it argues that Thomas did not properly rely on others who had the required technical knowledge and expertise.

It appears clear that Thomas, a finance expert, is not attempting to assert expertise in the arena of patty forming machine technology. That is, his report does not suggest that his conclusions about non-infringing alternatives are based on his own work or skill, but instead are based on the opinions of those in the industry. (*Id.*) Accordingly, the first two objections are of little impact, because Thomas is not attempting to pass off any kind of technical expertise. The third objection is that Thomas did not have adequate grounds for relying on the work of others who *did* have the

2

requisite expertise. For example, Formax notes that he never read the report of Defendants' technical expert, Frederick Elder. But Thomas is not a technical expert, and so it is unclear what efficacy reading the report would have had. Instead, Thomas simply adopted Elder's conclusion that viable alternatives existed. (*Id.* at ¶ 50.) Whether Elder is right or not is a separate question.

Formax's objection ultimately seems self-contradictory. On the one hand, it claims Thomas lacks the proper expertise to opine about the technical aspects of competing technology. But on the other hand, it complains that he has not done sufficient research in that field or independently verified the findings and conclusions of those in the industry, such as Elder. But if Thomas is not a technical expert—as he would readily admit—it makes little sense to criticize him for not delving into the technical side of things. Presumably there are very few people who would be qualified to give compound opinions that involve both engineering technology *and* finance; one does not need to be an expert in everything. It is perfectly reasonable for a finance and damages expert to adopt the conclusions of other experts. Whether those conclusions are sound can be explored at trial through cross-examination and other expert testimony. But the mere fact that a technical assumption is built into a financial analysis does not render that analysis subject to disqualification before it even sees the light of day.

**2. Formax's Second *Daubert* Motion to Exclude Testimony of Frederick Elder, Ph.D. [ECF No. 206]**

Frederick Elder, a University of Wisconsin engineer, is an engineering expert testifying on behalf of the Defendants. He is of the opinion that the claims of the '743 patent would have been rendered obvious and / or anticipated by prior technology. Formax argues that Elder's opinions must be excluded because he was unaware of the proper burden of proof — clear and convincing

3

evidence — that governs the standards for invalidity.

At trial, the question will be whether the *jury* is convinced by clear and convincing evidence—not whether *Elder* is. Presumably many experts are convinced by clear and convincing evidence—or even beyond a reasonable doubt—of their *own* opinions. Formax has not cited a case where a testifying witness was disqualified because he did not know the proper standard of proof required in order to carry the day. Just as a witness to a murder need not know the law or the burden of proof before testifying about a defendant's guilt, so an expert witness may be allowed to reach a given conclusion even if unaware of what burden of proof will ultimately be required. Formax will be free to argue to the jury that Elder's opinions are not strong enough to meet the burden of proof, but that burden of proof is not somehow required to be incorporated into the expert's own conclusion prior to giving his testimony.

Formax also seeks disqualification on the grounds that Elder appeared to conflate the distinct legal defenses of anticipation and obviousness. "Obviousness can be proven by combining existing prior art references, while anticipation requires all elements of a claim to be disclosed within a single reference." *Cohesive Technologies, Inc. v. Waters Corp.,* 543 F.3d 1351 (Fed. Cir. 2008). There is some overlap between the two defenses, of course: "it is commonly understood that prior art references that anticipate a claim will usually render that claim obvious." *Id.* But again, Elder is not testifying as a legal expert—nor could he. A technical expert's role under these circumstances is to explain why earlier technology anticipates or renders obvious the claims of a patent; in doing so, the expert is not rendering a *legal* opinion but merely a factual-expert opinion based on his own expertise and experience. *Sunbeam Products, Inc. v. Homedics, Inc.,* 670 F.Supp.2d 873, 883 (W.D.Wis. 2009) ("Williamson was not retained for his expertise on the patent or patent law and

4

he is in no position to offer an opinion about invalidity or infringement. Even if he were, such an opinion would be of no use in any event. . . . What matters is an expert's testimony about how the device works or what makes the patented invention obvious or anticipated. Although Williamson made several statements about whether the '420 patent is invalid, obvious or infringed, such statements do not warrant exclusion of his expert reports altogether.")

Thus, to the extent Elder attempts to reach legal conclusions, those conclusions will be irrelevant in any event. What's important is his expertise and whether he can demonstrate to the jury, which will be instructed in the substantive law as well as the burden of proof. Presumably most engineering experts are not also patent lawyers. The fact that an engineer does not know the burden of proof or the difference between anticipation and obviousness—something ninety-five percent of attorneys would not be able to explain—is not a reason to disqualify him.

**3. Defendants' Motion to Exclude Lost Profits Testimony [ECF No. 211]**

Formax retained an expert, Julie Davis, to give opinions about Formax's lost profits due to infringement. Defendants argue that Davis' testimony about lost profits must be barred because she does not have any basis for determining the price at which the lost sales would have sold. If she does not have a firm conclusion as to price, it means (Defendants argue) she can have no reliable grounds for coming up with a figure for lost profits.

The analysis centers on the fourth of the *Panduit* factors—the amount of profit the patentee would have made absent the infringement. *Panduit,* 575 F.2d at 1156. The other three factors—demand, absence of non-infringing alternatives, and manufacturing and marketing capability—all speak to sales, *i.e.,* how many units would have sold in what is known as the "but-for" world ("but for" the infringement, the number of sales the patentee would have realized). The

5

fourth factor, focusing only on *profits*, includes an analysis of overhead costs and factors like pricing. In sum, in applying the *Panduit* factors, the first three steps look at how many units would have sold, and the fourth focuses on what amount of profit should have been realized by the patentee based on all of those unsold units.

The number of units sold multiplied by the price will determine the revenues, and then manufacturing costs and other overhead are deducted from revenues to reach an estimate of lost profits. Thus, if one knows how many units would have sold, but not at what *price,* it will be impossible to determine revenues and lost profits. Davis explained her price analysis as follows:

> I am aware that the Formax price is generally higher than the price the customer paid to the Defendants. I understand that Formax witnesses will testify at trial that Formax could have sold those units to the Defendants' customers at the same average price paid by other Formax customers during that time period. I expect that the Defendants will argue that the customers who purchased the accused products would not have paid more in the "but for" world than they did in the real world. Therefore, I have calculated lost profits under two scenarios – one using the Formax price and one using the Alkar price.

(ECF No. 227 at 37.)

The problem is imagining, in this "but for" world, what price would-be Formax customers would have paid. If there were no infringing products on the market, would they have been forced to buy from Formax at its higher prices? They might instead have demanded lower prices (although with unknown bargaining leverage), or perhaps they would not have purchased the units at all because they were simply too expensive. No one is able to predict such matters with any certainty, of course. Davis' approach essentially punts on the pricing question, leaving it to the jury to decide what kind of demand there was for Formax products and whether the customers would have paid Formax's prices or whether they would have paid no more than Alkar's prices. Ultimately, she

concludes that if Formax were able to receive its prices on the lost sales, its profit margins would have been 35% and 76% for machines and replacement parts. If Alkar's prices were used, the margins would be 27% and 67%. This amounts to a final total of either $4.3 million (using Formax prices) or $2.9 million (the Defendants' prices). (ECF No. 227 at 38.)

I conclude that Davis' approach is a reasonable one. Davis is a financial expert, not an expert on a hypothetical market for food patty forming machines. In reaching a damages amount, a jury will have to rely on a mosaic of factors outside of Davis' knowledge. In particular, a jury will have to judge what real-live customers would have done in the but-for world where there were no infringing alternatives. Making that determination will require the jury to gauge the proper pricing assumption based on their conclusions about the desirability of Formax's products and its pricing power in that but-for marketplace. Davis has given a jury two options, and conceivably the jury could end up somewhere in the middle as well. Such calculations are ultimately guesses. They cannot be based on pure speculation, of course, but it is enough that a jury has a reasonable foundation for recreating a world that never existed. Davis' opinions allow the jury to make such a determination. "Although the parties must support their positions with sound economic proof, absolute certainty is not required, for reconstruction of the 'but for' mark et is 'by definition a hypothetical enterprise' based on the evidence introduced at trial." *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1383 (Fed. Cir. 2002).

**4. Conclusion**

For the reasons given herein, the motions [206, 211, 224] are **DENIED**.

**SO ORDERED** this 7th day of July, 2014.

                                        /s William C. Griesbach
                                        William C. Griesbach, Chief Judge
                                        United States District Court